## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **MELISSA A. DAVIS** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 6:21cv288-KNM** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits.  The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636.  For the reasons below, the Commissioner's final decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits on September 10, 2019, alleging a disability onset date of January 1, 2017.  The application was denied initially and on reconsideration.  Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  The ALJ conducted a hearing by telephone due to the COVID-19 pandemic.  He issued an unfavorable decision on January 8, 2021.  Plaintiff submitted a request for review of the ALJ's decision.  The Appeals Council denied the request for review on April 27, 2021.  Plaintiff then filed this lawsuit on July 27, 2021, seeking judicial review of the Commissioner's decision.

**STANDARD**

Title II of the Act provides for federal disability insurance benefits.  Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*).  A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision."  *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Rather, conflicts in the evidence are for the Commissioner to decide.  *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).  A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).

Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history.  *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987).  If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings."  *Cook*, 750 F.2d at 393 (5th Cir. 1985).  The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A).  A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process.  *Villa*, 895 F.2d 1022.  A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry.  *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475).  Under the five–step sequential analysis, the Commissioner must determine at

Step One whether the claimant is currently engaged in substantial gainful activity.  At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I.  Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work.  Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy.  20 C.F.R. §§ 404.1520(b)–(f).  An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled."  *See Villa*, 895 F.2d at 1022.  An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*.  To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982).  The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work.  *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional

loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 CFR §§ 404.1520a(d), 416.920a(d).  If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]."  20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in her January 8, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since January 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: fibromyalgia, osteoarthritis, obesity, chronic obstructive pulmonary disorder ("COPD"), hearing loss, depression, and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with the following additional limitations.  The claimant is limited to occasional postural activities with no climbing of ladders, ropes, and scaffolds.  She is limited to no overhead work.  She can frequently handle and finger.  She must avoid concentrated exposure to pulmonary irritants such as fumes and gases.  She is limited to a working environment involving office noise, which is defined as moderate noise. She can understand, remember, and carry out simple, routine and repetitive tasks on a regular and continuing basis, meaning eight hours a day, 40 hours a week.  The claimant should work with things rather than people (no close coordination with coworkers or supervisors).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 16, 1972 and was 44 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2019, through the date of this decision (20 CFR 404.1520(g).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at her hearing before the ALJ on December 17, 2020.  Plaintiff testified that her past work includes work as an owner/office manager of a janitorial service.  Plaintiff

explained that her duties included payroll, taxes, hiring and firing, obtaining new accounts, maintaining accounts, training and filling in performing janitorial duties as needed.  She lives with her parents, brother and son.  Plaintiff stated that she spends her days sitting with her parents, watching TV, reading, helping her son with schoolwork and doing chores such as cooking or laundry.  She explained, however, that it can take her two or three days to complete laundry. Plaintiff stated that she is able to drive.

Plaintiff testified that she cannot walk a block and can only walk from one room to another in her home due to pain in her back, hips, and feet.  She stated that she can lift a gallon of milk, sit for approximately ten minutes before needing to reposition or get up and stand for approximately one minute before her legs give out.  Plaintiff lies down most of the time to take pressure off her back and hips.  She also stated that she has difficulty sleeping even with a sleep aide and she is working on getting a CPAP to alleviate her sleep apnea.

Plaintiff testified that she stopped working for the janitorial service because she could no longer do the work mentally or physically.  She explained that she has difficulty speaking with people and could not perform the physical demands of the job anymore.  Plaintiff stated that she has been diagnosed with bipolar disorder, depression and anxiety.  She has difficulty controlling her emotions and talking to people and can only be in a store around people for short periods of time.

Plaintiff testified that she has had neuropathy in her feet for fifteen years, but it progressively became worse to the point that she can no longer feel the bottom of her feet except for a burning and stinging sensation.  She described constant pain from her feet to her knees and rheumatoid arthritis that is throughout her body but especially bad in her thumbs and fingers. Plaintiff also stated that she had surgery when she was twelve that resulted in the loss of most

hearing in her left ear and, more recently, her hearing has deteriorated.  Plaintiff testified that she has hypertension, weight gain, COPD, fibromyalgia, chronic kidney failure stage 3, chronic pain syndrome, and asthma.  Plaintiff stated that her pain medication makes her drowsy and another medication makes her shaky.

Plaintiff testified that she cannot pick up coins or reach overhead and she frequently drops things due to numbness in her hands.  She also has difficulty with concentration, but she is able to maintain her medication schedule every morning and night.  She stated that she shuts down in social situations, affecting her breathing, concentration and ability to talk.

A vocational expert witness, Cindy Harris, also testified at Plaintiff's hearing.  Ms. Harris classified Plaintiff's past work as including: (1) office manager, DOT 169.167-034, sedentary, skilled, SVP 7; and (2) commercial cleaner, DOT 381.687-014, heavy, unskilled, SVP 2 (performed at the medium level).  The ALJ presented a hypothetical individual of Plaintiff's education, age, and experience who is limited to light work with only occasional postural activities, no climbing of ladders, scaffolds or ropes, no overhead work, frequent handling and fingering, no concentrated exposure to pulmonary irritants such as fumes and gases, and no noise above the office noise level who can understand, remember and carry out simple, routine, repetitive tasks on a regular and continuing basis, meaning eight hours per day forty hours per week, working with things rather than people such that there is no close coordination with coworkers and supervisors. Ms. Harris testified that the hypothetical individual could not perform Plaintiff's past work, but she identified the following jobs that would be available: (1) marker, DOT 209.587-034, light, unskilled, SVP 2, with 227,000 jobs in the national economy; (2) routing clerk, DOT 222.687-022, light, unskilled, SVP 2, with 105,000 positions in the national economy; and (3) router, DOT 222.587-038, light, unskilled, SVP 2, with 35,000 jobs in in the national economy.

The ALJ added a limitation such that the hypothetical individual would need additional work breaks throughout the workday up to fifteen minutes per hour.  The individual would be off task up to twenty or twenty-five percent of the workday due to psychological difficulties or physical pain.  Based on her training, education and experience, Ms. Harris testified that the individual could not maintain employment.

*Medical Record*

The Andrews Center completed an initial assessment on December 5, 2018.  Plaintiff reported cutting herself, anxiety and depression.  Claudia Walker, LPC, noted that Plaintiff's mood was anxious, labile, depressed and dramatized and her speech was rapid, pressured, and rambling. Plaintiff was set up for medication management.  During a video conference on January 9, 2019, with Yan Cao, APRN, Plaintiff's mental status examination was within normal limits.  She started Plaintiff on Trintellix.

Plaintiff had an office visit with Dr. Amber Dawson on March 4, 2019 seeking to establish care.  She reported that she planned to cut herself.  Dr. Dawson consulted the psychology department and Plaintiff was admitted.   Plaintiff's primary diagnosis was major depressive disorder, recurrent, severe without psychotic features.  Plaintiff was treated with Prozac for depression and Hydroxyzine p.r.n. for anxiety.  Plaintiff denied that she would harm herself because of her son and requested to be discharged.  She was discharged on March 6, 2019 after it was determined that she did not exhibit any current evidence of an imminent risk of harm to herself or others.

At a return visit to the Andrews Center on March 18, 2019, Plaintiff reported that she felt worse on Trintellix and required inpatient treatment.  Plaintiff stated that she was treated with

Prozac for depression and Hydroxyzine for anxiety, but she continued having panic attacks and chronic fatigue. Nurse Cao increased Plaintiff's Hydroxyzine dosage.

Plaintiff returned to Dr. Dawson on March 29, 2019 and complained of anxiety, leg pain, shoulder pain, neck pain and epigastric pain. Plaintiff was alert and exhibited a normal gait and affect. Plaintiff requested a referral to pain management. Dr. Dawson recommended that Plaintiff consult with her psychiatrist concerning whether she could take Amitryptiline or Cymbalta for neuropathic pain. Dr. Dawson also recommended a physical activity program.

When Plaintiff returned to the Andrews Center on April 17, 2019, she stated that she did not feel Hydroxyzine was helping at all. Plaintiff's mental status examination remained within normal limits on May 15, 2019. On July 1, 2019, Plaintiff reported suicidal thoughts. Plaintiff's attention span and concentration, thought content and process, cognition, orientation, fund of knowledge, memory, speech and mood and affect were within normal limits. Plaintiff's insight and judgment were fair. Nurse Cao recommended hospitalization for safety due to Plaintiff's concern that she could not avoid harming herself.

Dr. Dudley Goulden, a cardiologist, evaluated Plaintiff on May 29, 2019. Plaintiff reported a long history of hypertension and a lack of compliance with blood pressure medication. Dr. Goulden opined that Plaintiff's symptoms were caused by hypertension. At a follow up on July 15, 2019, he added a notation that chest wall pain is musculoskeletal and may be related to neuropathy.

Plaintiff went to Dr. Dawson for a routine visit on July 2, 2019, complaining of sharp chest pain with anxiety and depression. Plaintiff stated that she is "always suicidal," but she denied any recent cutting and did not want to speak to a psychologist.[1] Plaintiff requested pain medication

---

[1] Administrative Record, ECF 13-15, at *29 (Bates stamp p. 639).

and sleep medication.  Dr. Dawson noted that she could not prescribe any controlled substances with Plaintiff's reports of suicidal ideation and opined that Plaintiff "is obviously looking for someone to prescribe her controlled substances."[2]

On July 24, 2019, Plaintiff went to the emergency room complaining of radiating chest pain and migraine.  On examination, she had normal strength in the upper and lower extremities and intact sensation.  Breath sounds were normal and there was no respiratory distress or neurological deficits.  Dr. Hoff determined that Plaintiff's chest pain was atypical for angina. Cardiac examination and chest X-Ray were normal and an EKG showed a normal sinus rhythm. A CT angiogram was unremarkable and showed no pulmonary embolism or aortic dissection. Plaintiff was alert with normal mood and affect.

Plaintiff returned to the emergency room with chest pain on August 15, 2019.  An EKG showed a normal sinus rhythm.  At a psychiatry follow up on August 19, 2019, Plaintiff complained that she was not being prescribed benzodiazepines.[3]  She reported daily anxiety and multiple ER visits for chest pain.  Each ER visit resulted in normal cardiological findings and she would leave after receiving Tramadol and Ativan.[4] Plaintiff asserted that benzodiazepines are the only medications that help her anxiety.  Dr. Eyuel noted a history of inpatient hospitalization, non-adherence to treatment, longstanding symptomology, drug-seeking behaviors and possible malingering or exaggeration of symptoms.[5]  Dr. Eyuel stated that benzodiazepines would not be prescribed due to a "history of benzo seeking behaviors" but he prescribed Seroquel and Trazodone.[6]

---

[2] *Id*. at \*32 (Bates stamp p. 642).
[3] Administrative Record, ECF 13-18, at \*7 (Bates stamp p. 767).
[4] *Id*.
[5] *Id*. at \*11 (Bates stamp p. 771).
[6] *Id*.

Plaintiff went back to the emergency room on September 7, 2019 with kidney pain.  An abdominal/pelvic CT showed no acute process.  Plaintiff was diagnosed with a lumbar strain.  On September 19, 2019, Plaintiff was assessed by Dr. Bryan Hyland for chronic kidney disease, hypertension, depression and neuropathy.  Plaintiff reported headache, worry, depression and hopelessness.  Physical examination findings were normal.  Dr. Hyland ordered labs.  At a return visit on October 3, 2019, Dr. Hyland noted that Plaintiff has symptoms consistent with fibromyalgia.  He recommended treatment with Flexeril and Norco.  Plaintiff's labs were normal with the exception of cholesterol.

Andrew L. Schmitt, Ph.D., performed an evaluation for psychotherapy services on October 10, 2019.  Dr. Schmitt opined that Plaintiff meets the criteria for Borderline Personality Disorder, Generalized Anxiety Disorder and Bipolar Disorder, Type 2.  He further determined that Plaintiff has adequate insight and judgment to benefit from psychotherapy.  At a visit on October 24, 2019, Plaintiff demonstrated adequate memory, insight and judgment, but her thought processes were circumstantial and scattered at times.  Plaintiff denied any current suicidal ideation.  Plaintiff had several psychotherapy sessions and followed up with psychiatry on December 23, 2019.  Dr. Eyuel noted Plaintiff was moderately dysthymic and mildly anxious.

When Plaintiff returned to Dr. Hyland on November 4, 2019, she reported some symptom improvement with the medications.  On January 13, 2020, Plaintiff complained of nasal congestion.  Physical examination was normal except for Plaintiff's ears which showed erythema and effusions.  Dr. Flavill examined Plaintiff for tympanic membrane perforation and sinus symptoms on February 4, 2020.  He added prescriptions for a nasal spray and a sinus rinse.

State agency consultants reviewed the record and prepared opinions concerning Plaintiff's impairments.  On December 20, 2019, Sarah Jackson, Ph.D., concluded that Plaintiff has mild

limitations in her ability to understand, remember or apply information, interact with others and adapt or manage herself and moderate limitations in the ability to concentrate, persist, or maintain pace.  She determined that Plaintiff does not meet or equal a listing.  Dr. Jackson also completed a mental residual functional capacity assessment to consider her ability to perform sustained work. She concluded that Plaintiff is moderately limited in her ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or in proximity to others without being distracted by them and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   She is markedly limited in the ability to carry out detailed instructions, but not significantly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, the ability to sustain an ordinary routine without special supervision or the ability to make simple work-related decisions. On reconsideration, Thomas VanHoose, Ph.D., agreed with Dr. Jackson's assessment on February 21, 2020.

Dr. Scott Spoor reviewed the record concerning Plaintiff's physical impairments and assessed her physical residual functional capacity.  He determined that Plaintiff can lift and carry up to twenty pounds occasionally and ten pounds frequently, stand, walk or sit with normal breaks for a total of six hours in eight-hour workday, and perform unlimited pushing and pulling within the parameters of the lift and carry restriction.  Dr. Spoor also opined that Plaintiff is limited to frequent overhead reaching due to fibromyalgia.  On reconsideration, Dr. Tom Dees reached the same conclusions.

Plaintiff returned to Dr. Eyuel on February 3, 2020 and complained of worsening anxiety. She was moderately dysthymic and anxious.  Her appearance was relatively unkempt, she exhibited average intellectual functioning and poor insight and judgment.  Dr. Eyuel discussed medication management in coordination with Plaintiff's primary care physician.

Dr. David Jones, a pulmonologist, evaluated Plaintiff on March 24, 2020 for breathing problems.  Dr. Jones diagnosed mild COPD related to cigarette smoking, super morbid obesity and obesity hypoventilation syndrome.  Dr. Jones noted indications of sleep apnea.  He prescribed an inhaler, referred Plaintiff to her primary care physician for weight management and counseled her to stop smoking, but Plaintiff stated she had no desire to stop smoking.

Plaintiff returned to Dr. Flavill on May 11, 2020 for TMJ pain and ear pain.  Plaintiff exhibited TMJ tenderness.  Dr. Flavill recommended audiogram and tympanogram.  He prescribed Norco and Vraylar.  On June 16, 2020, Dr. Flavill noted improved TMJ symptoms and requested a CT to view the sinuses due to thick mucous and crusting in the nasal cavity.  The CT showed left maxillary sinus mucosal thickening, bilateral inferior turbinate hypertrophy, bilateral concha bullosa, bilateral haller cell obstructing the right and left maxillary sinus natural ostia and osteomeatal complex, left open posterior fontanel/accessory maxillary sinus ostium and bilateral nasal septal deviation.  Audiology testing showed conductive hearing loss of the left ear with restricted hearing of the right ear.

A rheumatologist, Dr. Muhammad Imran, examined Plaintiff on April 22, 2020.  Based on patient history and physical examination, Dr. Imran agreed with Dr. Hyland's diagnosis of fibromyalgia and ordered testing.  At a follow up on May 13, 2020, Plaintiff reported no significant improvement with Depo-Medrol and Toradol injections.  Plaintiff had an elevated erythrocyte

sedimentation rate and C-reactive protein with digital soft tissue swelling shown in hand X-Rays but no erosions.  Dr. Imran later added Plaquenil for inflammatory arthropathy.

Plaintiff received a referral for a sleep study.  A July 22, 2020 polysomnography showed mild obstructive sleep apnea with severe snoring.

Dr. Hyland completed a Neuropathy Medical Source Statement on August 18, 2020.  Dr. Hyland identified Plaintiff's diagnoses to include bipolar 1 disorder, chronic pain syndrome, fibromyalgia, hypertension, CKD stage III and asthma.  He opined that her prognosis is poor and her symptoms include pain, paresthesias, weakness, chronic fatigue and cramping and burning of the calves and feet with moderate pain intermittently in the shoulders, chest and hips.  Dr. Hyland stated that Plaintiff has reduced ability to persist in tasks, depression and anxiety, as well as drowsiness caused by medication.  He estimated that Plaintiff can walk one city block, sit for thirty minutes at a time, stand for fifteen minutes at a time and sit, stand or walk for less than two hours in an eight-hour workday.  Dr. Hyland determined that Plaintiff would need the ability to shift positions and would need daily unscheduled breaks.  He opined that Plaintiff could rarely lift up to ten pounds, rarely twist, and never stoop or crouch/squat.  He also noted significant limitation in reaching, handling or fingering, reduced by twenty-five percent.  Dr. Hyland stated that Plaintiff is likely to be off task twenty-five percent or more of a workday and cannot tolerate even low stress work.  He estimated that Plaintiff would be absent more than four workdays per month.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff presents three issues for review: (1) whether the Commissioner erred as a matter of law by failing to consider whether her fibromyalgia and osteoarthritis met or equaled a listing and by failing to consider symptoms related to fibromyalgia under SSR 12-2p; (2) whether the Commissioner erred as a matter of law by failing to build an accurate and logical bridge

between her severe conditions of fibromyalgia and osteoarthritis and the RFC finding; and (3) whether the Commissioner erred as a matter of law by failing to consider a third-party function report (witness statement).   Plaintiff asserts that the ALJ improperly failed to evaluate her symptoms in light of Listing 14.09(D) or any other listing and did not evaluate her symptoms under the Social Security Ruling applicable to fibromyalgia, SSR 12-2p.  Plaintiff submits that the ALJ erred by finding fibromyalgia a severe impairment but then failing to address or explain whether it meets a listing. Further, Plaintiff argues that the ALJ did not adequately explain how her fibromyalgia and osteoarthritis conditions were accounted for in the residual functional capacity assessment.  Finally, Plaintiff asserts that the ALJ did not consider a third-party function report completed by her father, Carl Bradshaw.[7]

In response, the Commissioner asserts that Plaintiff failed to meet her burden of showing that she met or medically equaled a listed impairment.  The Commissioner further asserts that it was unnecessary for the ALJ to explain his finding that Plaintiff did not have an impairment or combination of impairments that medically equaled a listing because SSR 17-2p does not require the citation of evidence in support of a "medical equivalence" finding.  If there was an error, the Commissioner argues that it was harmless because Plaintiff has not shown repeated manifestations of inflammatory arthritis with at least two of the identified symptoms or signs or a "marked" limitation in activities of daily living, maintaining social functioning, or completing tasks timely due to deficiencies in concentration, persistence, or pace.  The Commissioner submits that the ALJ properly considered and accounted for Plaintiff's impairments in his RFC finding and substantial evidence supports the finding that Plaintiff can perform a modified range of light work.  Finally,

---

[7] Administrative Record, ECF 13-8, at *23–30 (Bates stamp p. 240–247).

the Commissioner asserts that the ALJ was not required to articulate his consideration of the third-party function report completed by Plaintiff's father.

**Step Three Finding**

At step three of the sequential process, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets or equals one of the listings in Appendix 1.  The burden is on the claimant at step three to show that he meets or medically equals a listed impairment.  *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989). In his finding concerning listed impairments, the ALJ expressly states that he considered only Listings 2.10 (hearing loss not treated with cochlear implantation), 3.02 (chronic respiratory disorders), 12.04 (depressive and bipolar related disorders) and 12.06 (anxiety and obsessive-compulsive related disorders).[8]  The ALJ concluded that the medical evidence does not establish the criteria for any of these listed impairments and he explained his reasoning for each one.

After determining that Plaintiff's fibromyalgia is a severe impairment, the ALJ did not mention SSR 12-2p or address fibromyalgia in his step three analysis.  Fibromyalgia is not an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  When an impairment is not described in Appendix 1, the regulations instruct that the claimant's findings will be compared "with those for closely analogous listed impairments."  20 C.F.R. § 404.1526 (b)(2).  "If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Commissioner] will find that your impairment(s) is medically equivalent to the analogous listing."  *Id*.

Social Security Rulings ("SSR") "are binding on all components of the Social Security Administration" and they "represent precedent final opinions and orders and statements of policy

---

[8] Administrative Record, ECF 13-2, at *15 (Bates stamp p. 14).

and interpretations that [the Social Security Administration] ha[s] adopted."   20 C.F.R. §
402.35(b)(2).  The Commissioner issued SSR 12-2p in 2012 to provide guidance on the evaluation
of fibromyalgia.  SSR 12-2p, 2012 WL 3104869 (2012).  The SSR describes fibromyalgia as "a
complex medical condition characterized primarily by widespread pain in the joints, muscles,
tendons, or nearby soft tissues that has persisted for at least 3 months."  *Id*.  Fibromyalgia that is
established by appropriate medical evidence can be the basis for a finding of disability. *Id*.  After
a determination is made at step two concerning whether a claimant's fibromyalgia is a medically
determinable impairment, the SSR explains the consideration at step three:

> At step 3, we consider whether the person's impairment(s) meets or medically
> equals the criteria of any of the listings in the Listing of Impairments in appendix
> 1, subpart P of 20 CFR part 404 (appendix 1).  FM cannot meet a listing in appendix
> 1 because FM is not a listed impairment.  At step 3, therefore, we determine whether
> FM medically equals a listing (for example, Listing 14.09D in the listing for
> inflammatory arthritis), or whether it medically equals a listing in combination with
> at least one other medically determinable impairment.

*Id*. at *6 (¶ VI (C)).

Here, the ALJ identified the severe impairment of fibromyalgia but did not consider
whether Plaintiff's fibromyalgia medically equaled the severity of Listing 14.09D or any other
listing alone or in combination with any other medically determinable impairment.  The ALJ's
written decision shows no consideration of fibromyalgia or SSR 12-2p at step three.   The
Commissioner argues that SSR 17-2p alleviates any need to cite evidence if the ALJ is relying on
a finding that a medically determinable impairment does not medically equal a listing.  There is
no evidence, however, that the ALJ considered fibromyalgia at step three at all or that he
determined Plaintiff's fibromyalgia symptoms do not medically equal a listing.  The Commissioner
further argues that Plaintiff has not established the criteria for Listing 14.09D, but SSR 12-2p does
not specifically require a claimant's fibromyalgia to medically equal the listing for inflammatory

arthritis at step three.  SSR 12-2p requires a determination of whether it "equals a listing" and recites Listing 14.09D as an example of a listing that may be considered.  SSR 12-2p, 2012 WL 3104869 (2012).

The failure to consider a claimant's fibromyalgia in accordance with SSR 12-2p is error. *McCurry v. Kijakazi*, 2022 WL 3135753 (W.D.Tex. Aug. 5, 2022) (adopted Sept. 26, 2022); *Patrick v. Commissioner of Social Security Administration*, 2022 WL 2813751 (S.D. MS June 30, 2022); *Waterman v. U.S. Commissioner, Social Security Administration*, 2017 WL 1238042 (W.D. LA Jan. 18, 2017); and *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (recognizing that a "sea-change occurred in 2012, when the SSA issued a ruling recognizing fibromyalgia as a valid 'basis for a finding of disability.'").   The ALJ failed to apply the proper legal standards.

The Commissioner agues that the error is harmless. A harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).  In light of the complete absence of any discussion of fibromyalgia or SSR 12-2p in the ALJ's opinion at step three, the Court is unable to determine that the ALJ properly analyzed fibromyalgia at step three or that the decision is supported by substantial evidence.   The error is not harmless.  *See McCurry v. Kijakazi*, 2022 WL 3135753, at *4 (W.D.Tex. Aug. 5, 2022) (adopted Sept. 26, 2022); *Waterman v. U.S. Commissioner, Social Security Administration*, 2017 WL 1238042, at *11 (W.D. LA Jan. 18, 2017).  Because the "ALJ's consideration of Plaintiff's fibromyalgia could have altered his determination at step three and in subsequent steps," the Court does not reach the remaining assertions of error relevant to the residual functional capacity analysis. *McCurry v. Kijakazi*, 2022 WL 3135753, at *4 (W.D.Tex. Aug. 5, 2022) (adopted Sept. 26, 2022).

The ALJ failed to apply the proper legal standards at step three and the matter should be remanded for further administrative proceedings, to include evaluation of Plaintiff's fibromyalgia in accordance with 20 C.F.R. § 404.1526(b)(2) and SSR 12-2p.  It is therefore

**ORDERED** that the Commissioner's final decision is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with the findings above.


So ORDERED and SIGNED this 31st day of October, 2022.


K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE